**IN THE UNITED STATED DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1)  DANI MCCALL, an individual<br><br>        Plaintiff,<br><br>v.<br><br>(1)  COVIDEN, L.P., a foreign limited<br>      partnership,<br><br>(2)  ROLLER WEIGHT LOSS AND<br>      ADVANCED SURGERY, P.A., a<br>      foreign for profit  Professional<br>      Association,<br><br>(3)  NORTHWEST MEDICAL CENTER, a<br>      foreign not for profit corporation,<br><br>(4)  JOSHUA MOUROT, an individual<br><br>        Defendants. | Case No.    4:21-cv-00005-CVE-CDL<br><br><br><br><br><br>ATTORNEY LIEN CLAIMED<br>JURY TRIAL DEMANDED |

**COMPLAINT**

**COMES NOW** the Plaintiff, Dani McCall, by and through her attorneys of record,

SMOLEN | LAW, PLLC, and for her cause of action against Defendants Coviden, L.P.; Roller Weight

Loss and Advanced Surgery P.A.; Northwest Medical Center; and Joshua Mourot, M.D., sets forth

and states as follows:

**PARTIES,**

1.      Plaintiff is a citizen of the State of Oklahoma, residing in Wyandotte, Ottawa

County, within this Judicial District.

2.      Covidien LP, ("Covidien"), is a foreign for profit professional corporation located

at 15 Hampshire Street, Mansfield, Massachusetts 02048, with substantial ties to this judicial

district.

3.      Defendant Roller Weight Loss and Advanced Surgery ("RWLAS") is a foreign for profit professional corporation headquartered at 15 Hampshire Street, Mansfield, Massachusetts 02048, with an additional place of business located at 3311 East 46th Street, Tulsa, OK 74135.

4.      Defendant Northwest Medical Center ("NWMS") is a foreign not for profit corporation with its principal place of business in Bentonville, Arkansas, with substantial ties to this judicial district.

5.      Upon information and belief that will be confirmed through discovery, Defendant Joshua Mourot is a resident of Arkansas who, relevant to this litigation, provided medical treatment to Plaintiff and was an employee/agent and/or shareholder of Coviden, RWLAS, and/or NWMC at all times relevant hereto.

6.      NWMC is a large health system with a number of locations across the state of Arkansas, including a location in Siloam Springs, Arkansas, which is less than 5 miles from the Oklahoma border. Further, NWMC physicians commonly see patients who are citizens of Oklahoma.

7.      Upon information and belief, NWMC contracts with and accepts payments for medical services from the Oklahoma Healthcare Authority (i.e., Oklahoma Medicaid).

8.      In addition to having an office in Oklahoma, Defendant RWLAS actively advertises and promotes its medical services to Oklahoma residents in Northeastern Oklahoma. In fact, RWLAS' website states that "Roller Weight Loss & Advanced Surgery doctors serve patients in Northwest Arkansas and Tulsa, Oklahoma."

9.      Both RWLAS and NWMC knowingly serve Oklahoma citizens with the provision of medical services.

10.     Coviden is and has been at all times pertinent to this proceeding, engaged in the design and manufacturing of medical technologies used by surgeons to treat a variety of conditions, including, but not limited to, hernia repairs

11.     The Symbotex Mesh™ product is a surgical mesh material that is constructed of a three-dimensional monofilament polyester textile, which is covered with an absorbable, continuous and hydrophilic film on one of its sides. Covidien applied for U.S. Food and Drug Administration ("FDA") clearance to market Symbotex Mesh™ under Section 510(k) of the Medical Device Amendment.

12.     Coviden designed, packaged, labeled, marketed, sold, and distributed the Symbotex Mesh™ at all times relevant hereto.

13. Covidien actively sells, markets and promotes their Hernia Mesh Products (Symbotex mesh™) to physicians and consumers in this state on a regular and consistent basis.

**JURISDICTION & VENUE**

14.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00 and is a controversy between citizens of different states.

15.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts, occurrences and omissions giving rise to Plaintiff's claims occurred within the confines of the Judicial District for the Northern District of Oklahoma and because the Defendants purposefully directed medical services activities to citizens of Oklahoma in Oklahoma and Plaintiff's injuries claimed herein arose out of such actives.

16.     Defendants at all relevant times regularly conducted and solicited, and continue to conduct and solicit, business in the State of Oklahoma through its agents, servants and employees, and because Defendants were engaged, and continue to engage, in marketing, distributing,

promoting, and/or selling, either directly or indirectly, and/or through third parties or related entities, products, including but not limited to hernia mesh products, in Oklahoma.

17.     Defendants, at all relevant times, engage and continue to engage, in a persistent course of conduct in the State of Oklahoma and derive substantial revenue from interstate and/or international commerce.

18.     Plaintiff's claims arise from and relate to Defendants' purposeful availment of the State of Oklahoma because Defendants' wrongful conduct in researching, developing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, processing, marketing, promoting, distributing, selling, hernia mesh products, took place, in whole or in part, in the State of Oklahoma. Therefore, the claims of this Plaintiff relate to and arise from Defendants' explicit contacts and purposeful availment of the State of Oklahoma.

**FACTS COMMON TO ALL CLAIMS**

19.     Paragraphs 1-18 are incorporated herein by reference.

20.     Plaintiff, Dani McCall, saw Dr. Joshua Mourot on January 3, 2019 with complaints of a large abdominal bulge and corresponding pain. Dr. Mourot is a general surgeon. At that January 3, 2019 visit, Defendant Mourot diagnosed Plaintiff with a symptomatic incisional hernia.

21.     Dr. Mourot advised Plaintiff that the hernia was the source of her pain and advised Plaintiff to undergo a robotic assisted laparoscopic incisional hernia repair with mesh on January 7, 2019, at Northwest Medical Center in Springdale, Arkansas.

22.     The surgery recommended by Mourot required the placement of a Symbotex Mesh™ SYM9, (Lot No: PSC1154X), which was manufactured, sold, and/or distributed by Defendant Coviden, be implanted into Plaintiff.

23.     The Symbotex Mesh™ was implanted into Plaintiff on January 7, 2019 at NWMC, without any complications.

24.     After the January 7, 2019 surgery, Plaintiff began experiencing complications which included extreme pain, vomiting, and diarrhea.

25.     Plaintiff's pain was so bad that she was forced to go to the Emergency Room ("ER") on multiple occasions, such as trips to Integris Hospital in Miami, OK ("Integris Miami") on April 14, 2019 and Mercy Hospital in Joplin, MO ("Mercy Joplin") on May 17, 2019

26.     Because of the Plaintiff's continued complications with Plaintiff's abdomen, Dr. Mourot performed a transnasal esophagoscopy and a lysis of adhesions on May 30, 2019 to evaluate what was causing her pain. A lysis of adhesions is a procedure that destroys scar tissue that has developed after a surgery. Dr. Mourot did not find another ulcer but did refer Plaintiff for further treatment with a gastrointestinal doctor.

27.     On June 3, 2019, Plaintiff again went to the Integris Miami ER because of the pain. At that visit Plaintiff stated that she was having 20-30 episodes of diarrhea per day. Plaintiff went again to the Mercy Joplin ER on June 19, 2020, where the ER physicians noted that Plaintiff was suffering from complications from her January 7, 2019 surgery.

28.     Because of the continued pain, diarrhea, and vomiting Plaintiff was experiencing, Dr. Mourot recommended another evaluation of Plaintiff's abdomen, and he performed a laparoscopic lysis of adhesions and an internal hernia repair on June 24, 2019 at NWMC.

29.     On the morning of August 28, 2019, Plaintiff presented to RWLAS again complaining of abdominal pain. Dr. Mourot was not present to see Plaintiff, but another doctor in the group evaluated Plaintiff and was concerned with what she saw in the Plaintiff's abdomen. The evaluating physician advised Plaintiff to immediately go to the ER at NWMC.

30.     While in the ER at NWMC a CT scan was done of Plaintiff's abdomen which was inconclusive, so it was determined that another appendectomy should be performed to evaluate the Plaintiff's abdomen.  The operation was scheduled to be performed by Dr. Mourot the following day.

31.     On the afternoon of August 28, 2019, Dr. Mourot performed the operation and discovered that Plaintiff's appendix was inflamed and needed to be removed. In addition to removing Plaintiff's appendix, Dr. Mourot also performed a lysis of adhesions.

32.     After the August 28, 2019 surgery, Plaintiff was still unable to keep food down, which resulted in a peripherally inserted central catheter ("PICC") line being placed in the Plaintiff's arm on September 13, 2020 to help her malnourishment.

33.     On September 15, 2019, just days after receiving the PICC line, Plaintiff presented to Mercy Joplin with a 100-degree fever was admitted to the hospital until September 18, 2019.

34.     On November 12, 2019, Plaintiff presented to NWMC with more complaints of abdominal pain. She was subsequently diagnosed with a marginal ulcer.

35.     Because of the ulcer, Dr. Jamie Dutton performed yet another operation on November 14, 2019. The operation consisted of a diagnostic laparoscopy, upper endoscopy, and a lysis of adhesions. In her notes from the surgery Dr. Dutton pointed out that there were "omental adhesions to the mesh."

36.     Following the November 14, 2019 surgery to repair the hernia, Plaintiff made three more trips to the emergency room on November 25, 2019, December 12, 2019, and December 29, 2019.

37.     On January 2, 2020, Plaintiff sought treatment with Dr. Mourot to discuss the results of a recent CT scan she had received that revealed inflammation around the Symbotex

Mesh™. Dr. Mourot reviewed the CT scan and confirmed that the mesh was inflamed. At that

point Dr. Mourot recommended Plaintiff have the mesh removed.

38.     On the afternoon of January 3, 2020, Plaintiff had the Symbotex Mesh™ removed

by Dr. Mourot at NWMC.

39.     The Pathologist that evaluated the removed the Symbotex Mesh™ from Plaintiff

performed a "tissue report" where he noted that the Symbotex Mesh™ had fragmented and was

covered in "markedly adherent soft tissue." The pathologist continued concluding that the mesh

had caused "chronic inflammation."

40.     Defendant Coviden's Symbotex Mesh™ contained a defect that made it

unreasonably dangerous and unfit for its intended use. The Symbotex Mesh™ was defective in

design or formulation in that, when it left the hands of Coviden, the foreseeable risk of harm

grossly exceeded the benefits associated with the design or formulation of the product.

41.     Defendants Mourot, RWLAS and NWMC deviated from the applicable standard of

care in many ways, including but not limited to, failing to properly place the Symbotex Mesh™ in

Plaintiff and failing to timely remove the mesh once it had failed.

42.     As a result of the Defendants' negligence, fraud, and deficient design, manufacture

and distribution of the mesh at issue, Plaintiff has suffered actual damages, including but not

limited to personal injury, mental and physical pain and suffering, mental anguish, and other actual

damages in excess of $75,000

## CAUSES OF ACTION

### I. MEDICAL NEGLIGENCE AS TO DEFENDANTS MOUROT, RWLAS, AND NWMC

43. Paragraphs 1-42 are incorporated herein by reference.

44. Defendants, as well as Defendants' employees, agents, shareholders and/or contractors, owed a duty to Plaintiff to provide reasonable medical care and treatment, including a duty to apply, with ordinary care and diligence, the knowledge and skill possessed by other similarly situated individuals in the medical community.

45. Defendants, by and through their employees, agents, shareholders and/or contractors, failed to exercise ordinary, reasonable and proper care in providing medical treatment to Plaintiff.

46. The injuries sustained were a direct and proximate result of Defendants' breach of these duties.

47. Upon information and belief that will be confirmed through discovery, Defendants RWLAS and NWMC is/are vicariously liable for the negligence of their agents/employees, including but not limited to Defendant Mourot, pursuant to the legal doctrines of *respondeat superior* and/or ostensible agency.

48. As a proximate result of the afore-mentioned acts and/or omissions, Plaintiff has suffered actual damages including, but not limited to, personal injury, medical expenses, mental and physical pain and suffering and other actual damages in excess of seventy-five thousand dollars ($75,000.00).

## II.   DEFECTIVE DESIGN AND MANUFACTURING AS TO DEFENDANT COVIDEN

49. Paragraphs 1-48 are incorporated herein by reference.

50. Defendant manufactured, developed, researched, produced, tested, assembled, labeled, distributed, marketed and sold the mesh at issue, it contained a defect that made it unreasonably dangerous and unfit for its intended use.

51. Defendant Coviden placed its Symbotex Mesh™ product, defined herein, into the stream of commerce with the actual or constructive knowledge that it would be used without inspection for defects.

52. Defendant Coviden's Symbotex Mesh™ product was defective in their manufacture.

53. Defendant Coviden's Symbotex Mesh™ product was defective by design.

54. The Symbotex Mesh™, manufactured by Defendant Coviden, was defective in design or formulation in that, when it left the hands of the Defendant, the foreseeable risk of harm grossly exceeded the benefits associated with the design or formulation of the product.

55. Because of defects in the Defendant's Symbotex Mesh™ product, it is, and was at all relevant times material hereto, unreasonably dangerous.

56. Alternative designs for the Symbotex Mesh™ product and/or procedures existed that were and/or are less dangerous and equally, it not more, effective.

57. Plaintiff used Defendant Coviden's product in a manner for which it was intended or in a reasonably foreseeable manner.

58. As a direct and proximate result of the defective and unreasonably Symbotex Mesh™ product Plaintiff has suffered actual damages including, but not limited to, personal injury, medical expenses, mental and physical pain and suffering and other actual damages in excess of seventy-five thousand dollars ($75,000.00).

### III.   BREACH OF IMPLIED WARRANTY AS TO DEFENDANT COVIDEN

59.     Paragraphs 1-58 are incorporated herein by reference.

60.     Defendant Coviden designed, manufactured, labeled, distributed and sold the Symbotex Mesh™ at issue in this case.

61.     The Symbotex Mesh™ contained an implied warranty that it would not be defective

or unreasonably dangerous.

62. The Symbotex Mesh™ was not merchantable at the time it was manufactured, sold, and/or distributed in that it was defective and unreasonably dangerous.

63. The above representations made by Defendant were meant to directly or indirectly induce persons such as Plaintiff and the Plaintiff's doctors to purchase the Symbotex Mesh™.

64. Plaintiff was a foreseeable user of the product manufactured and sold by Defendant Coviden.

65. The product failed while being used for its intended purpose, causing injury to Plaintiff.

66. As a direct and proximate cause of this breach of implied warranty, Plaintiff has suffered actual damages including, but not limited to, personal injury, medical expenses, mental and physical pain and suffering and other actual damages in excess of seventy-five thousand dollars ($75,000.00).

### IV. VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT AS TO ALL DEFENDANTS

67. Paragraphs 1-66 are incorporated herein by reference.

68. The Defendants acted, used and employed unconscionable commercial practices, deception, fraud, false pretenses, false promises and misrepresentations, and knowingly concealed, suppressed and omitted material facts with the intent that consumers, including Plaintiff herein and Plaintiff's physicians and medical providers, rely upon such concealment, suppression and omission, in connection with sale, advertisement and promotion of Symbotex Mesh™, in violation of all applicable state consumer fraud statutes, for the purpose of influencing and inducing physicians and medical providers to implant the Symbotex Mesh™, to patients/consumers such as the Plaintiff.

69. Specifically, the actions, omissions and representations of the Defendants, their employees, agents and/or representatives, individually and/or collectively, violate the Oklahoma Consumer Protection Act, OKLA. STAT. TIT. 15, §§ 751, *et seq*.

70. As a direct result of said actions, omissions and representations, the Defendants' unconscionable, deceptive and fraudulent acts and practices, and false pretenses, false promises and misrepresentations, reasonable patients/consumers acting reasonably, such as the Plaintiff herein Plaintiff has suffered actual damages including, but not limited to, personal injury, medical expenses, mental and physical pain and suffering and other actual damages in excess of seventy-five thousand dollars ($75,000.00).

### COUNT V. PUNITIVE DAMAGES AS TO ALL DEFENDANTS

71. Paragraphs 1-70 are incorporated herein by reference.

72. Defendants acted intentionally, maliciously and in reckless disregard for the rights of the Plaintiff. As a result, the Plaintiff is entitled to recover punitive damages against the Defendants for these actions.

WHEREFORE, Plaintiff prays this Court enter judgment against Defendants and grant him the relief sought including, but not limited to, actual damages in excess of seventy-five thousand dollars ($75,000.00), costs, pre-judgment interest, attorney's fees, punitive damages in excess of seventy-five thousand dollars ($75,000.00), post-judgment interest and all other relief deemed appropriate by this Court.

Respectfully submitted,

SMOLEN | LAW, PLLC


/s/Donald E. Smolen, II
Donald E. Smolen, II, OBA #19944
Laura L. Hamilton, OBA #22619
John Warren, OBA # 33635
611 S. Detroit Avenue
Tulsa, OK 74120
P: (918) 777-4LAW (4529)
F: (918) 890-4529
don@smolen.law
laura@smolen.law
jack@smolen.law
www.smolen.law
*Attorneys for Plaintiff*